**UNITED STATES of America, Plaintiff,**

v.

**Maurice HORTON, Defendant.**

No. 95–30027.

United States District Court,
C.D. Illinois,
Springfield Division.

Dec. 11, 1995.

Patrick J. Chesley, Joseph H. Hartzler, Gregory M. Gilmore, Asst. U.S. Attorneys, Springfield, IL, for plaintiff.

Jon Gray Noll, Springfield, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge:

### I. BACKGROUND

Maurice Horton was a "copycat".

He made a false bomb threat to destroy the Paul Findley Federal Building in Springfield, Illinois, one day after a very real and very large bomb all but destroyed the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma.

At approximately 10:00 a.m., on April 20, 1995, Horton entered the Findley Federal

Building, and because of tightened security, was asked to show identification. Horton became agitated as a result of the security measures. At approximately 12:30 p.m. a WICS Channel 20 reporter, who was filming a story on the increased security, saw Horton in front of the Findley Building. Fifteen minutes later, a Springfield city employee saw Horton on the first floor of the Springfield Municipal Building, which is across the street from the Findley Building.

At 1:00 p.m., Horton entered the Mayor's office of the City of Springfield and asked to see the Mayor. The Mayor's secretary told Horton that the Mayor was unavailable. Horton then told the Mayor's secretary that "there has been a bomb threat at the Federal Building and they closed the door." At 1:09 p.m. Horton placed a telephone call from a pay phone in the Municipal Building to the United States Marshal's office in the Findley Federal Building. Horton told the court security officer who answered the telephone that "one is going to go off in fifteen minutes." At 1:10 p.m. two Springfield city employees saw Horton at the pay telephone on the third floor of the Municipal building.

Predictably, the Findley Federal Building was evacuated, sealed, and searched. The building houses fourteen government agencies, including courts, law enforcement agencies, and social service agencies. As a result of the evacuation, the Findley Federal Building was closed for the remainder of the work day, resulting in the loss of over 400 work hours (the building houses approximately 123 employees). Federal, state, and local law enforcement agencies secured the building and searched it for the nonexistent explosive device. Additionally, members of the public wishing to do business with any of the fourteen agencies housed in the Findley Building were prohibited from doing so for the remainder of the day.

The Grand Jury indicted Horton on two counts. Count I charged Horton with willfully and maliciously conveying false information "knowing the same to be false, concerning an attempt and alleged attempt being made, and to be made, unlawfully to damage and destroy the Paul Findley Federal Building by means of explosive. . . ." Count II charged Horton with making false statements to Special Agents of the Federal Bureau of Investigation during their investigation of the bomb threat.

Horton pleaded guilty to Count I, admitting that he violated 18 U.S.C. § 844(e), which carries a maximum penalty of 5 years imprisonment.

On November 13, 1995, this Court sentenced Horton on Count I to 40 months imprisonment, to be followed by 3 years of supervised release.[1] At the time of sentencing, the Government moved to dismiss Count II.

## II. APPLICATION OF THE GUIDELINES

This case was difficult for the sentencing court. While the conduct in this case was very serious, the parties—both the defendant and the government—sought only minimal punishment. The Sentencing Guidelines also seem to recommend an unreasonably light sentence. But Defendant pleaded guilty to an offense carrying a maximum penalty of 5 years imprisonment and the Court is obliged to see that he receives just punishment.[2]

---

1. On November 13, 1995, the Court entered an order making findings and rulings on Defendant's objections to the Presentence Investigation Report (PSR) and providing the Court's rationale for the sentence imposed. This opinion will not discuss Defendant's objections to the PSR.

2. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
. . . .

18 U.S.C. §§ 3553(a)(1), (a)(2).

## A. *Guidelines Provisions*

The starting point in sentencing is always the Sentencing Guidelines. Section 2A6.1 provides a base offense level of 12 for violations of 18 U.S.C. § 844(e). The Guidelines further provide that "[i]f the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels." U.S.S.G. § 2A6.1(b)(1). If, however, "specific offense characteristic § 2A6.1(b)(1) does not apply, and the offense involved a single instance evidencing little or no deliberation, decrease by 4 levels." Id. § 2A6.1(b)(2). To determine the proper final offense level, the Court must decide whether either of the two special criteria described in the Guidelines are present.

In the Presentence Investigation Report (PSR), the probation officer concluded that Horton's offense level should be 6. The probation officer reached this conclusion by granting a 4 level reduction because the parties' plea agreement stated that the offense evidenced little or no deliberation. The probation officer also granted Horton a 2 level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1(a). Horton's Criminal History Score was within Category III. According to the PSR, the sentence range was 2 to 8 months.

## B. *Four Point Reduction for Little or No Deliberation*

■ The Court reviewed the PSR and received a joint stipulation from the Government and Horton regarding the relevant facts. Based on the information provided, the Court concludes that the 4 level reduction pursuant to § 2A6.1(b)(2) is not appropriate in this case. Although this case involves only a single instance of threatening conduct, the Court finds that Horton's conduct evidenced more than "little or no deliberation." Therefore, Horton is not entitled to the 4 point reduction in offense level.

■ The plea agreement stated that the § 2A6.1(b)(2) reduction should be granted. But as the parties acknowledge, the Court is not bound by the terms of the plea agreement. *See* Fed.R.Crim.P. 11(e); U.S.S.G.

§ 6B1.1(b) (policy statement); *United States v. Sanchez–Estrada,* 62 F.3d 981, 987 (7th Cir.1995); *see also United States v. Jimenez–Otero,* 898 F.2d 813 (1st Cir.1990) (affirming district court decision to enhance offense level by 6 because the defendant engaged in conduct evidencing intent to carry out his threat, despite plea agreement stating that the 4 level reduction was appropriate). Additionally, paragraph 6 of the plea agreement states that "the Court will not be bound by any recommendation made by any party, and that the Court will be free to impose whatever sentence it deems appropriate up to the statutory maximum...."

Evidence of more than little or no deliberation is abundant. Horton's conduct took place over at least 39 minutes and may have lasted for over 2 hours. Horton's threat followed closely the tragic Oklahoma City bombing—which had occurred the day before—and clearly took advantage of the Federal Government's heightened fear of terrorist attacks. Horton's threat occurred in an environment of heightened security in which it was certain to be taken very seriously. The PSR reports that Horton has previously pleaded guilty to two counts of assault arising out of threatening conduct, making it clear that Horton knew the serious nature of his conduct. Horton knew what he was doing and did it intentionally and deliberately.

What little discussion of the 4 level reduction provided by § 2A6.1(b)(2) in other opinions indicates that even the smallest amount of deliberation deprives the defendant of the reduction. Recently the Ninth Circuit concluded that threats contained in two letters a defendant wrote on the spur of the moment, while intoxicated, were made with more than little or no deliberation. *United States v. Sanders,* 41 F.3d 480 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2010, 131 L.Ed.2d 1009 (1995). There, Sanders sent documents containing racial and ethnic slurs, death threats, and hateful caricatures to the local NAACP chapter and to a Jewish congregation. *Id.* at 482. The sentencing judge concluded that Sanders' conduct evidenced deliberation because:

[t]he contents of the writings themselves demonstrate that some deliberation went into their preparation. Moreover, [Sanders] selected two distinct groups of victims, he selected them for their race and religion, and he tailored the contents of his letters to their race and religion. [He] then obtained the victims' addresses, attached proper postage, and deposited the two letters in two different mail drop boxes. These actions show a deliberate thought process rather than an impulsive action.

*Id.* at 485 (quoting Sentencing Memorandum at 7) (alterations in original). The Ninth Circuit concluded that the district court's conclusion was not clearly erroneous because, while Sanders' statements clearly did not demonstrate intelligent thought, they did show that he had put time and effort into the threats. Specifically, the court noted that the threats contained statements tailored to the victims that were "calculated to frighten and upset two particular groups of victims and to imply that they should take his threats seriously." *Id.* at 485.

In *United States v. Fann,* 41 F.3d 1218 (8th Cir.1994), the Eighth Circuit upheld a district court's refusal to grant the 4 level reduction under § 2A6.1(b)(2). The defendant had threatened the life of the President. The district court rested it decision not to reduce the offense level on the following facts: "Fann communicated his threat on more than one occasion to different people; he communicated the threats over the telephone, in writing, in statements to the Secret Service, and in statements to the press; and he added and subtracted detail as he issued his various statements." *Id.* at 1219. The Eighth Circuit found that this evidence was sufficient to sustain the district court's refusal to grant the 4 level reduction.

In *United States v. Bellrichard,* 801 F.Supp. 263 (D.Minn.1992), the defendant was convicted on five counts of mailing threatening communications in violation of 18 U.S.C. § 876. Bellrichard argued that he should receive a 4 level departure on two of the counts because they involved single letters evidencing little deliberation. *Id.* at 265. In response, the sentencing judge stated:

"The defendant may have impulsively decided to write [the letters] ... but the process of obtaining an address, conveying his thoughts onto paper, taking that paper to a mailbox, and mailing the letter shows the deliberation that was involved. This process is different than making a single oral threat on the spur of the moment, or other conduct which might warrant the reduction." *Id.* at 265–66.

These cases establish that more than little or no deliberation exists if the defendant's threat was something other than an off-the-cuff remark or a crime of opportunity. In this case, Horton selected the target for his threat because of news coverage and heightened security in response to the Oklahoma City bombing. He delivered his threat on two occasions: in person to the Springfield Mayor's office and over the telephone to the United States Marshal's Office. Horton's threat did not occur in the midst of an argument or a fight. Instead it was calculated to cause maximum commotion. Horton's threat may have originated in an impulsive exercise of poor judgment, but his actions in carrying it out evidence more than the minimal deliberation that this Court must find in order to grant the § 2A6.1(b)(2) reduction.

### C. *Upward Departure*

#### 1. Standard for Upward Departures

■ The sentencing court must impose a sentence within the Guideline range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553. To upwardly depart from the prescribed guideline range, a sentencing court must make three conclusions: (1) that proper grounds exist for departure, (2) that the facts support a departure based on those grounds, and (3) that the degree of departure is reasonable. *United States v. Ewers,* 54 F.3d 419, 420 (7th Cir.1995).

#### 2. Horton's Conduct Warrants an Upward Departure

■ The plea agreement satisfies the first and second prongs of the upward departure

inquiry—the parties agreed that an upward departure is warranted pursuant to U.S.S.G. § 5K2.7, which provides that disruption of a significant government function is proper grounds for an upward departure unless governmental disruption is inherent in the defendant's offense.[3]

The facts confirm the parties' agreement. Horton pleaded guilty to a violation of 18 U.S.C. § 844(e). That Section prohibits threats to destroy by fire or explosive "*any* building, vehicle, or other real or personal property." 18 U.S.C. § 844(e) (emphasis added). Section 844(e) does not inherently involve impairment of government functioning. The potential disruption caused by threatening to destroy a government building is vastly different than the potential disruption caused by threatening to destroy minor items of private property. *See* U.S.S.G. § 2A6.1 Application Note (stating that the Guideline covers a wide variety of conduct and that "[f]actors not incorporated into the guideline may be considered by the court in determining whether a departure from the guidelines is warranted"). The Court finds that the Guideline does not adequately account for the degree to which Horton's conduct impaired government functioning.

■ In addition to being warranted because the Sentencing Commission did not consider impairment of government functioning when it drafted § 2A6.1, an upward departure for disruption of a government function is appropriate in Horton's case. Horton's bomb threat came one day after the horrific bombing of the Alfred P. Murrah Federal Building in Oklahoma City. Horton was apparently motivated to make the threat because he was required to show identification upon entering the Findley Federal Building, a result of heightened security in the wake of the Oklahoma City bombing. Playing on enhanced fears, Horton vented his frustration by phoning in a bomb threat to the Findley Federal Building.

As a result of Horton's threat, the Findley Federal Building was evacuated and closed for half a day. Fourteen federal agencies were forced to close their offices, losing over 400 hours of work. Members of the public wishing access to any of those agencies, including courts, law enforcement agencies, and the postal service, were unable to enter the building until the next day. The search for the nonexistent explosive device needlessly occupied numerous members of federal, state, and local law enforcement agencies, interfering with their ordinary work and endangering the community as a whole.

While some government expense, in investigation, prosecution, and punishment, is inherent in the operation of the criminal justice system, and therefore taken into account in formulating the guideline ranges, the disruption caused by Horton's conduct far exceeds that which the Sentencing Commission could have contemplated.

### 3. Degree of Departure

■ The parties disagree about the third prong of the upward departure inquiry: the reasonableness of the degree of departure. The Government seeks a departure equivalent to 3 offense levels. Horton argues for a departure half that size, of only one and a half levels. The Court finds that neither the Government's nor Horton's recommended departures adequately deal with this case. Based on the severity of Horton's conduct and its significant impact on government functioning, the Court finds that an upward departure equivalent to an 8 level increase in the offense level is appropriate.

■ To be reasonable in degree, an upward departure must be tied to the structure of the Sentencing Guidelines. *See United States v. Archambault*, 62 F.3d 995, 1002 (7th Cir.1995); *United States v. Feekes*, 929 F.2d

---

**3.** The Sentencing Guidelines provide:

> If the defendant's conduct resulted in a significant disruption of a government function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines would not be

> justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.
>
> U.S.S.G. § 5K2.7.

334, 337 (7th Cir.1991). Initially, the Court notes that an 8 offense level departure yields an offense level within the range provided by the Sentencing Guidelines. The offense level range provided by § 2A6.1 is from 8 to 18. As the Sentencing Commission noted, it was not possible to "include all potentially relevant circumstances in the offense level." § 2A6.1, Application Note. This Court has determined that § 2A6.1 does not adequately account for potential disruption of a government function. In keeping with the spirit of the Application Note, this Court has enhanced Horton's offense level to 18, the upper limit of the § 2A6.1 range.

A departure of 6 offense levels mirrors the only enhancement specifically listed in § 2A6.1. The additional 2 level departure in this case is not just for good measure. Instead, the additional 2 point enhancement parallels enhancements for conduct closely related to interference with government functioning.

Several provisions of the Sentencing Guidelines apply by analogy to suggest that an additional 2 level departure is appropriate. First, § 3A1.1 provides for a 2 level increase in the offense level if the "defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." Horton made his bomb threat on the day after the infamous Oklahoma City bombing. It is apparent from the record that the threat was motivated, at least in part, by enhanced security at the Findley Federal Building. In a heightened security environment, in the wake of a massive tragedy, the federal government itself can be considered a victim "otherwise particularly susceptible" to harm from false bomb threats.

Second, § 3C1.1 provides a 2 level increase for obstructing or impeding the administration of justice. Horton's bomb threat directly interfered with the operation of the courts and law enforcement agencies housed in the Findley Federal Building. While the count of the indictment charging obstruction of justice in this case has been dismissed by the Government, Horton's conduct obstructed justice in all matters pending before the courts housed in the Findley Federal Building. Additionally, Horton's threat unduly burdened the law enforcement officers who searched and secured the building, and endangered the community by tying up large numbers of law enforcement officers.

Finally, § 3A1.2 provides for a 3 level increase in the offense level if the "victim was a government officer or employee." While Horton's threat did not have victims per se, it impaired the operation of the government in the same way a threat on the life of a particular government employee hinders that employee in the performance of his or her job.

Upwardly departing an amount equivalent to 8 offense levels compensates for the Sentencing Commission's lack of consideration for the possibility of severe interference with government functioning as a result of false bomb threats. Six levels of the 8 level departure directly parallel the structure of the applicable guideline. The additional 2 level departure corresponds to either the vulnerable victim, official victim, or obstruction of justice enhancements. Those provisions are appropriate hallmarks for judging the severity of a threat to destroy a government building and the disruption of government functioning that threat caused.

## III. CONCLUSION

The Court finds that Horton's conduct warrants a firm response. The applicable provision of the Sentencing Guidelines, even when properly applied, does not adequately account for the seriousness of Horton's crime. The Court must upwardly depart from the applicable guideline range to impose a sentence that fits the crime.

One final note. At the time Horton entered his guilty plea, this Court specifically admonished him that sentencing was the Court's job and that the Court would listen to the recommendations by way of sentencing of counsel for both the Government and Horton, but that the Court would not be bound by their recommendations, even if they were joint or agreed recommendations. Horton acknowledged in open court that he understood that admonition. As already not-

ed, that admonition was also set forth in the written plea agreement which Horton read, discussed with his counsel, and thereafter signed.

The Court is disturbed with the apparent assumption by counsel that the Court is bound to impose a particular sentence simply because the parties have agreed to a certain sentence range and have recommended it to the Court. If this is the case, counsel are put on notice that they should dispel themselves of such a baseless misapprehension of the law of criminal procedure. *United States v. Eppinger*, 49 F.3d 1244, 1250–51 (7th Cir. 1995) (holding that a plea agreement such as the one at issue in this case was not binding on the judge even when the parties had erroneously calculated the possible sentence at the time of entering the agreement); *United States v. Bennett*, 990 F.2d 998 (7th Cir.1993) (a case from this Court in which the Seventh Circuit upheld this Court's decision not to enforce stipulations in the plea agreement). *See generally* Fed.R.Crim.P. 11(e). *But see* Fed.R.Crim.P. 11(e)(1)(C) (describing a type of plea agreement in which the parties agree that "a specific sentence is the appropriate disposition of the case").

The plea agreement is a contract between the government and the defendant. The Court is not a party to that contract and is not bound by its terms. Both parties here have lived up to the terms of their contract and made a recommendation in accord with its terms. The Court, however, does not agree with either the Government or Horton in this regard and executes its legal sentencing responsibility according to its interpretation of the statutes, Sentencing Guidelines, and controlling decisional authority.

Horton has an offense level of 10 and a criminal history within category III, yielding a sentencing range of 10 to 16 months imprisonment.

However, for the reasons discussed herein, the Court upwardly departs from the guidelines by 8 offense levels and determines that the range should be 33 to 41 months.

Allowing for a departure, Horton is sentenced to 40 months imprisonment. Upon release Horton shall serve a total of 3 years supervised release.