[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13281

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 13, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00077-CR-WBH-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEREMIAH GENE RUSSELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 13, 2009)

Before BLACK and MARCUS, Circuit Judges, and BUCKLEW,* District Judge.

BUCKLEW, District Judge:

_____

    * Honorable Susan C. Bucklew, United States District Judge for the Middle District of
Florida, sitting by designation.

Appellant, Jeremiah Gene Russell, appeals the 37-month sentence imposed by the district court after Appellant pled guilty to a violation of 18 U.S.C. § 871(a), which proscribes knowingly and willfully threatening the life of the President of the United States.

## I. BACKGROUND

Appellant was arrested on November 15, 2006 after calling 911 from a public payphone at a gas station and informing the dispatcher that he was "thinking about killing the President," that he "really mean[t] it," and that he would be waiting near the payphone for the police to come and pick him up. Corporal Preston Peavy of the Cherokee County Sheriff's Office responded to the gas station and located Appellant, who reiterated to the officer that he wanted to kill the President and explained that he would be forced to do so because the President had ordered that Appellant be killed. Corporal Peavy transported Appellant to the Cherokee County Sheriff's Office. At the Sheriff's office, Secret Service Agent Andrew Kull interviewed Appellant, who again stated that he was "gonna kill the President," and that he was "gonna make sure it happen[ed]" because, among other things, the President was raping Iraqi children. Appellant went on to say that if God or the Holy Spirit told him to kill, he would, and that he had been voluntarily committed to several hospitals in Florida for mental

2

problems.

In March of 2008, Appellant pled guilty to a one-count information charging him with a violation of 18 U.S.C. § 871(a). The Pre-sentence Investigation Report ("PSI") determined Appellant's base offense level to be a 12, pursuant to United States Sentencing Guidelines ("Guidelines") § 2A6.1(a)(1) and recommended a two-level increase under § 2A6.1(b)(2) for making more than two threats, a three-level increase under § 3A1.2(a) because the crime was motivated by the victim's status as a government officer, and a three-level reduction under § 3E1.1(b) for acceptance of responsibility, resulting in a total offense level of fourteen. The PSI determined the criminal-history category to be a V and the Guidelines range to be between 33 and 41 months. The PSI did not recommend a four-level decrease under § 2A6.1(b)(5) for an offense involving a "single instance evidencing little or no deliberation."

At sentencing, the district judge sustained Appellant's objection to the two-level increase under § 2A6.1(b)(2) for making more than two threats[1] but denied, over Appellant's objection, a four-level reduction under § 2A6.1(b)(5), applicable when the offense involves a "single instance evidencing little or no deliberation." Also over Appellant's objection, the district judge increased Appellant's offense

---

[1]The resulting reduction in Appellant's offense level made him eligible only for a two-level, rather than a three-level, decrease for his acceptance of responsibility under § 3E1.1.

level by three under § 3A1.2(a) of the Guidelines, as recommended by the PSI, finding that the offense was motivated by the victim's status as a government officer. The total offense level was a 13, with an applicable Guideline sentencing range of 30 to 37 months. The district court sentenced Appellant to 37 months of imprisonment and three years of supervised release. Appellant objected to the 37-month sentence, arguing that it was both procedurally and substantively unreasonable. He now appeals his sentence, attacking the district court's rulings with regard to the Guidelines issues and the reasonableness of the sentence.

## II. DISCUSSION

This Court reviews the factual findings underlying a district court's sentencing determination for clear error. *United States v. Williams*, 527 F.3d 1235, 1247 (11th Cir. 2008). It reviews the district court's application of the Guidelines to those facts *de novo*. *Id.* at 1247–48.

### A. *Denial of the Four-Level Decrease Under § 2A6.1(b)(5)*

This Court first examines the district court's denial of the four-level reduction required by the Guidelines § 2A6.1(b)(5) when an offense involves a "single instance evidencing little or no deliberation." Appellant claims that the district court wrongfully withheld this reduction because 1) the threat, although repeated multiple times, comprised only a single instance, and 2) the record is

devoid of evidence indicating that Appellant deliberated before making the threat and instead shows that Appellant was delusional and incapable of deliberation.

It appears that the district court did not find Appellant's conduct to constitute more than a single instance, but rather based its refusal to apply the § 2A6.1(b)(5) reduction on a finding of deliberation.[2]  This Court finds no clear error with regard to the lower court's finding of deliberation and affirms the district court's denial of the four-level decrease.

### 1. Single Instance of Conduct

The Eleventh Circuit has not articulated a formulaic definition of a "single instance" under § 2A6.1(b)(5).  However, the Circuit is not without the benefit of instructive jurisprudence, and that jurisprudence makes clear that identifying "a single instance" of threat is a heavily fact-dependent process.

The Ninth Circuit has held that a single threat and "a single instance" are not synonymous but that conduct involving several threats may constitute a "single instance" within the meaning of § 2A6.1(b)(5).  *United States v. Sanders*, 41 F.3d 480, 484 (9th Cir. 1994).  The *Sanders* court elaborated on the distinction,

---

[2]The district judge stated, in discussing the § 2A6.1(b)(5) enhancement, "I think it's not necessarily a separate instance of a threat, but I think it can be.  And I'm not really sure.  I kind of gave [Appellant] the benefit of the doubt."  (R69, p. 18.)  Also, in sustaining Appellant's objection to a two-level sentencing increase that was to be applied only if Appellant made two or more threats, the Court characterized Appellant's behavior as one threat made to the 911 dispatcher and merely repeated to Officer Peavy and Special Agent Kull.  (*Id.* at 15–16; *see also id.* at 2.)

explaining that several threats made as part of a single scheme or purpose would qualify as "a single instance," whereas multiple threats toward different targets based on distinct motivations would not. *Id.* The Eighth Circuit has held that threats can be ineligible for a single-instance classification when they are made through different media intended for separate audiences. *United States v. Humphreys*, 352 F.3d 1175, 1177 (8th Cir. 2003). In *Humphreys*, the Eighth Circuit held that the district court did not commit clear error in finding that a defendant's statements threatening the President were not a "single instance" because the defendant made threats by fax, in a chat room, and in person, communicating with three different people at different times, and the threats were not the result of a singular impulse. *Id.* As these cases illustrate, factual findings as to the interrelated nature of separate threats are a crucial factor in determining whether the threats constitute a single instance, or multiple instances.

Also instructive is the Eleventh Circuit opinion in *United States v. Scott*, 441 F.3d 1322 (11th Cir. 2006). In *Scott*, the Eleventh Circuit construed § 2A6.1(b)(1) of the Guidelines, which calls for a six-level offense increase when a defendant acts in a manner evidencing his intent to carry out the threat. The court found the increase applicable only when the conduct cited for the increase occurred prior to or during the offense, not once the defendant is in custody. *Id.*

6

at 1329. Both § 2A6.1(b)(1) and § 2A6.1(b)(5) involve offense-level adjustments based on conduct comprising "the offense," and thus, the *Scott* court's clarification of which acts constitute "the offense" in § 2A6.1(b)(1) is instructive in the interpretation of § 2A6.1(b)(5) here.

In this case, Appellant made a single 911 phone call threatening to kill the President, and then he repeated the threat to the officer dispatched to his location and repeated it again while being questioned by the Secret Service Agent at the Sheriff's Office. The Government argues that Appellant's statements to the 911 dispatcher, the investigating police officer, and the questioning agent all qualify as separate instances. However, in none of Appellant's statements did the stated victim or ultimate intention vary, and all of the remarks were made in the same course of dealings with law enforcement over a few hours. Therefore, applying the reasoning of the court in *Scott*, this Court finds that Appellant's threats are best construed as part of a "single instance."

## 2. Little or No Deliberation

For the four-level decrease under § 2A6.1(b)(5) to apply, a defendant's threat(s) must not only have been limited to a single instance, but it must also have evidenced little or no deliberation. Circuits differ as to what evidence is sufficient to allow a district court's inference that deliberation preceded a threat. The Fifth

Circuit, for example, upheld a district court's finding that a defendant deliberated before sending a threatening letter based on the sender's:

> . . . deliberate securing of stationery and postage, the composition of a letter, the search for an address, and the act of taking the letter to be mailed. It was not a spontaneous, momentary action done out of opportunity or impulse. There were many steps along the way in which he could have stopped himself, but he didn't.

*United States v. Stevenson*, 126 F.3d 662, 665 (5th Cir. 1997).

In *United States v. Horton*, 98 F.3d 313 (7th Cir. 1996), by contrast, the Seventh Circuit vacated a sentence and remanded to the district court for more thorough analysis as to the defendant's deliberation. The *Horton* court found that the district court's inference that the defendant had deliberated about whether to call in a bomb threat to a federal building was too speculative, despite the fact that the threat occurred one day after the Oklahoma City bombing and that the defendant had been in and around the building for 40 minutes before looking up the phone number for the United States Marshal's office in a telephone book and calling in the threat. *Id.* at 315–16, 319–20. The Seventh Circuit found that the district judge had failed to consider that some of the defendant's activities in the vicinity of the building prior to the phone call were entirely unrelated to the threat. *Id.* at 319–20. Both *Stevenson* and *Horton* elucidate the need for a case-by-case review of the factual context of a threat in order to make a deliberation finding.

8

Appellant argues that there is no evidence in the record that he deliberated before making the threat against the President. The district court, however, disagreed, and this Court cannot find clear error in that determination. At sentencing, Special Agent Kull testified that when he interviewed Appellant, Appellant stated "that he was on his way to kill the President, he had walked from Alabama to do so." (R69, pp. 7–8.) Appellant had, in fact, walked and hitchhiked from Alabama to Georgia before calling 911. (*Id.* at 17.) The district court found that "there had to be substantial deliberation between Alabama and Georgia. . . . Not counting what deliberation he might have engaged in prior to that time." (*Id.*) Further, the Government argued at sentencing that "the detail that the defendant went into . . . about why he wants to [kill the President]" also indicated deliberation, citing Appellant's various and detailed descriptions of the behavior that Appellant claimed necessitated the President's assassination. (*Id.* at 23–24.)

The deference owed to the district court's fact-finding compel this Court to affirm the district court's ruling as to the § 2A6.1(b)(5) four-level decrease. The district court was not clearly erroneous in its finding that Appellant's statements that he walked from Alabama to Georgia to kill the President, combined with Appellant's detailed explanations of the motivations underlying his threat, indicated that Appellant deliberated before making the 911 call. Pursuant to a

finding that Appellant deliberated before the offense, Appellant was not eligible for the four-level decrease under § 2A6.1(b)(5), and thus, the trial court was correct in so ruling.

B. *Application of the Three-Level Increase Under § 3A1.2(a)*

This Court next examines Appellant's claim that the three-level increase under § 3A1.2(a) of the Guidelines was wrongfully applied to his sentence. Section 3A1.2(a) of the Guidelines provides for a three-level offense increase if a defendant's crime was motivated by the victim's status as a government officer or employee. The increase does not apply if the crime was not motivated by the victim's official status, as when "both the defendant and victim were employed by the same government agency and the offense was motivated by a personal dispute," for example. U.S.S.G. § 3A1.2, n.3.

Appellant claims that the trial court erred in applying the § 3A1.2(a) increase in his case because Appellant's threat was unrelated to the President's official status but was instead motivated by Appellant's delusional thinking and his desire to be taken into custody. Appellant supports his argument by noting that he called the police, identified himself, revealed his location and intentions, and waited for the police to come get him. Further, Appellant claims that even his stated motivations were based on delusions about atrocities he believed the

10

President was committing in his individual, rather than official, capacity, such as raping children in Iraq and ordering people to kill Appellant. Appellant claims that his desire to kill the President should therefore be likened to a "personal dispute," rather than animus triggered by the victim's status as President of the United States.

The district court found that there was "no doubt" that Appellant was motivated by the President's status. This Court sees no clear error in that conclusion. It was not clear error to find that Appellant was driven by what he himself repeatedly and frequently cited as his motivation: the President's behavior as imagined by Appellant. Further, despite the fact that Appellant's stated motivation involved delusions of the abuse, rather than the proper use, of official power, this Court finds no clear error in the trial court's determination that the inciting imagined actions were associated with the President's official status. In this case, it was unnecessary to find that Appellant was motivated by behavior associated solely with the President's *proper* and *actual* use of his position. Here, it was sufficient to find that Appellant was provoked by acts he believed the President was committing by virtue of the power and opportunity afforded to him, *qua* President.

Thus, the trial court did not clearly err in finding that Appellant was

11

motivated by the President's official status.  Based on that finding, the court

properly applied the three-level increase under § 3A1.2(a).

### C.  *Reasonableness of Appellant's 37-Month Sentence*

Finally, this Court reviews the overall reasonableness of Appellant's

sentence.  A district court should determine a defendant's sentence by first

calculating the applicable Guideline range, next, hearing the parties' arguments as

to what would constitute a reasonable sentence, and finally, devising a sentence

calibrated to the facts of the case when considered in light of the factors listed

under 18 U.S.C. § 3553(a).  *Gall v. United States*, __ U.S. __, 128 S. Ct. 586, 596,

169 L. Ed. 2d 445, 457 (2007).  Under 18 U.S.C. § 3553(a), a district court must

consider a defendant's sentence in relation to the offense itself, the defendant's

history and characteristics, the need for punishment, promotion of respect for the

law, deterrence, protection of the public, the needs of the defendant, the

Guidelines, and policy concerns highlighted by the Sentencing Commission.

Mental deficiency has traditionally been viewed as a personal characteristic that

may mitigate the culpability of a defendant.  *See, e.g., Wiggins v. Smith*, 539 U.S.

510, 534–35, 123 S. Ct. 2527, 2542, 156 L. Ed. 2d 471, 493 (2003) (finding the

defendant's right to effective assistance of counsel was violated where a

defendant's counsel failed to investigate and present mitigating evidence,

including the defendant's diminished mental capacity); *Stephens v. Kemp*, 846 F.2d 642, 653–55 (11th Cir. 1988) (finding ineffective assistance of counsel where a defendant's counsel did not guide the jury by explaining that the defendant's mental condition could be used to mitigate his sentence).

An appellant may successfully challenge a sentence by showing that the district court committed a "significant procedural error, such as . . . failing to consider the § 3553(a) factors," when calculating the sentence. *Gall*, ___ U.S. at ___, 128 S. Ct. at 597, 169 L. Ed. 2d at 457. However, a district court need not expressly discuss each and every § 3553(a) factor at the time of sentencing, but need only note that it has considered a defendant's arguments along with the § 3553(a) factors. *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). In the absence of a procedural sentencing error by the district court, this Court reviews the sentence imposed for abuse of discretion, considering the reasonableness of the sentence when viewed in light of the factors outlined in § 3553(a). *Gall*, ___U.S. at ___, 128 S. Ct. at 597, 169 L. Ed. 2d at 457.

Appellant argues that his sentencing was procedurally errant and substantively unreasonable. First, Appellant claims procedural error in calculating his Guideline range, both because the range was miscalculated per the arguments

discussed above,[3] and because the district court did not take proper consideration of a § 3553(a) factor, Appellant's mental illness. Next, Appellant claims that the sentence is substantively unreasonable, because—despite acknowledging Appellant's delusional state at the time of the offense (*see, e.g.,* R69, p. 40)—the district court did not adjust the sentence and thus improperly sentenced Appellant just as it would a sane person who committed the same offense.

Because the other issues informing Appellant's reasonableness claim are discussed above, the only element left to examine is the district court's alleged failure to properly consider Appellant's mental illness in both the procedural and substantive determination of his sentence. Appellant's challenge to the overall reasonableness of his sentence is primarily founded in a single statement made by the trial judge:

> [I]t's hard for me to believe that the Sentencing Commission, when crafting the guidelines, did not recognize the fact that a substantial percentage of persons who threaten the life of the President are mentally unstable. I think it would be probably said to be common knowledge of that fact. And, yet, the guidelines do not carve out an exception for circumstances such— such as this.

(R69, p. 42.)

However, this single statement, when viewed in context, does not connote all that Appellant contends. First, as to the procedural accuracy of the sentencing

---

[3] *See* discussion *supra* Sections II.A–B.

14

calculation, the district court did not say that it could not consider mental illness or that it was not a § 3553(a) factor.   Rather, a more thorough examination of the sentencing transcript reveals that the district court did take Appellant's mental illness into account before fashioning Appellant's sentence.

The district judge heard from the parties about Appellant's mental condition at length and engaged the parties in their arguments as to the role the condition should play in sentencing.  (*See, e.g.*, R69, pp. 10–11, 19–21, 40–41.)  This is consistent with the assertion that the court believed Appellant's condition to be relevant.  Further, the district court expressly stated that the sentence "[took] into consideration the applicable sentencing factors under 18 U.S.C. § 3553(a).  And [the court had] carefully considered all of those factors and believe[d] that this [was] a fair and just and reasonable sentence under all the circumstances."  (*Id*. at 43.)  Under *Talley*, this statement and the surrounding circumstances of the sentencing are sufficient to show that the district court did not err procedurally by failing to consider Appellant's mental illness or to apprehend that the condition could serve as a basis for altering Appellant's sentence.

Next, as to the substantive reasonableness of the sentence, again the lengthy discussion of Appellant's mental illness at sentencing indicates that the district judge took Appellant's condition into account before imposing his sentence.

However, the district court was not required to reduce the sentence on the basis of Appellant's mental illness. The district judge clearly considered the issue. He summarized the Government's argument that Appellant's threat was real and serious, and Appellant's argument that the threat was merely a "cry for help" by a mentally unstable man. After considering the parties' arguments and all of the § 3553(a) factors, the district court found a 37-month sentence to be "a fair and just and reasonable sentence under all the circumstances." This Court has considered the reasonableness of the sentence imposed in light of the facts in the record, such as Appellant's mental illness and violent criminal history, and the arguments presented by the parties, and finds that the trial court did not abuse its discretion in imposing a 37-month Guideline-range sentence.

**AFFIRMED.**