UNITED STATES of America, Plaintiff–Appellee,

v.

David Tenorio SABLAN, Defendant–Appellant.

No. 94–10534.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1996.

Decided July 18, 1996.

William C. Bischoff, Agana, Guam, for defendant-appellant.

Before: FLETCHER, D.W. NELSON, and CANBY, Circuit Judges.

CANBY, Circuit Judge:

David Tenorio Sablan appeals the sentence imposed after his conviction for maliciously destroying property of the United States Post Office with an explosive in violation of 18 U.S.C. § 844(f). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We vacate Sablan's sentence and remand to the district court for resentencing.

**I.**

David Tenorio Sablan, a native and resident of Guam, was 29 years old at the time of sentencing. Sablan has a history of psychological and emotional problems. He and his sixteen siblings were physically abused by their alcoholic father when they were growing up. Sablan was categorized as a "slow learner" in elementary school, and he cannot read or write. An evaluation conducted while he was in high school revealed that Sablan's I.Q. was in the borderline range for mental retardation, and another evaluation in December 1993 confirmed this diagnosis. His high school psychological records indicate that Sablan was developmentally delayed, suffered from low self-esteem, was "easily led" by others, and had an "inadequate personality."

Sablan started his long history of drug abuse in the eleventh grade, when he began smoking up to ten marijuana cigarettes each day. He started using "ice" (methamphetamine) in 1987, and was smoking a gram of ice every day by the time of the instant offense.

A year before the commission of the offense, Sablan met "Chas" Simpson at Simpson's business, where Sablan's brother was employed. Sablan started living with Simpson periodically after Simpson asked

Mark E. Kondas, Assistant United States Attorney, Agana, Guam, for plaintiff-appellee.

Sablan to help him take care of his house. Although Sablan cleaned Simpson's house, mowed his lawn, and drove Simpson to and from work, Simpson never paid Sablan for his services because of his own financial difficulties. Simpson gave Sablan free ice, however, and repeatedly tried to convince Sablan to commit robberies and burglaries for him.

On November 12, 1993, Simpson picked up Sablan to go for a ride. During the ride, Sablan smoked a gram of ice that Simpson gave him. Simpson then gave Sablan a grenade, with instructions to throw the grenade inside the police station in Dededo. The explosion was supposed to act as a diversion for the robbery of a Payless store. When the time came for Sablan to throw the grenade, Sablan changed his mind and decided to throw it in a parking lot area near the Post Office. At his presentencing interview, Sablan stated that he had decided against throwing it at the police station because he did not want to injure other persons.

When Sablan threw the grenade, it bounced off a car in the parking lot and rolled towards the Post Office, near three bystanders. The victims—Annie Mendiola, Mildred Isimang, and Alvin Toves—started to run away when they realized that it was a grenade. The grenade exploded, injuring them with shrapnel. Each suffered substantial physical injuries from the explosion. The blast also damaged the exterior wall of the Post Office, two police cars, and private vehicles of police officers who were on duty. After the blast Sablan hid near the police station, where police later apprehended him.

Several forensic psychiatric and psychological evaluations of Sablan were conducted between December 1993 and January 1994. Sablan was diagnosed as methamphetamine dependent, and he was referred for further psychiatric evaluation because of paranoid delusions. One doctor diagnosed Sablan with Psychotic Disorder NOS (Not Otherwise Specified) and opined that the psychosis may have been drug-induced, but did not rule out schizophrenia because Sablan continued to hear voices. Another physician diagnosed Sablan as a schizotypal personality, a diag-

nosis related to Psychotic Disorder NOS, and as having borderline intellectual function. That physician opined that Sablan could control his actions but "may have believed he needed to complete the extraordinary deed as the only method to be accepted by people he thought would be his friends," and that "the act was likely calculated to damage a police car, not to injure bystanders." Two physicians opined that Sablan was competent to stand trial.

Sablan pled guilty to territorial charges in the Guam Superior Court. The plea bargain Sablan negotiated in the Superior Court allowed him to serve ten years, to run concurrently with any federal sentence imposed. Sablan subsequently sought federal prosecution so that he could serve his sentence in a federal penitentiary with better resources for psychological treatment than were available in the on-island facility.

Sablan pled guilty to a federal charge of maliciously damaging a Post Office with an explosive, in violation of 18 U.S.C. § 844(f), and negotiated a plea agreement with the U.S. Attorney. Under the terms of the plea bargain, the government agreed to recommend a sentence of 10 years. Despite the government's recommendation, at sentencing the district court departed from an offense level of 21 to an offense level of 37, and imposed the statutory maximum of 20 years imprisonment (the plea bargain anticipated an upward departure to a level 30 or 31). Sablan appeals his sentence.

**II.**

 Our analysis is informed by the recent decision of the Supreme Court in *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). We now review for abuse of discretion a district court's decision that it has authority to depart from the Guidelines sentence. *Id.* at ——, 116 S.Ct. at 2046. The primary ground for departure asserted by the district court here was the extensive injuries to bystanders. The parties agree that this was a permissible ground.[1] *See* U.S.S.G. § 2K1.4, application

---

1. The district court also mentioned property damage to the victims as a ground for departure,

and Sablan does not contest that point. The property damage was primarily minor damage to

note 1 (Nov. 1993).[2] Sablan challenges, however, the extent of the district court's upward departure under U.S.S.G. § 5K2.2.

Although the Supreme Court in *Koon* dealt with the grounds, and not the extent, of departure, the Supreme Court's opinion indicated that the sentencing court retains considerable discretion that should be recognized by the reviewing appellate court. *Koon*, at —— – ——, ——, 116 S.Ct. at 2044–48, 2053. Indeed, we have previously held that the magnitude of a departure is subject to review for abuse of discretion. *United States v. Takai*, 941 F.2d 738, 742 (9th Cir. 1991). Ultimately, of course, the governing statute requires that the sentence not be "unreasonable." 18 U.S.C. § 3742(f)(1)(2).

■ We do not, however, read *Koon* as freeing the district court from the general framework of the Guidelines in determining the extent of a departure. Indeed, *Koon* stated that the decision whether departure is justified by a factor not adequately considered by the Commission, or by the presence of a discouraged factor in an unusual or exceptional way, "are matters determined in large part by comparison with the facts of other Guidelines cases." *Koon*, —— U.S. at ——, 116 S.Ct. at 2047. Similarly, we conclude that the extent of an upward departure must still be governed by analogy to other Guidelines categories, as we held in *United States v. Lira–Barraza*, 941 F.2d 745, 748–51 (9th Cir.1991) (en banc). As we said there, "[t]he reasonableness of sentences determined without reference to identified standards would not be susceptible to rational review." *Id.* at 749. The district court retains discretion, but it is not free to divest itself entirely of the structure of the Guidelines. *Id.* at 748.

■ We conclude that, in this case, the district court abused its discretion by failing to establish the degree of the departure by analogy to other Guidelines provisions. Although the district court adequately explained its decision to depart upward because of the extensive injuries to the bystanders, it did not gauge the extent of its departure by reference to other Guidelines provisions. We have no way of knowing how the district court measured the degree of departure. *See id.* The district court's failure to analogize, and the unreasonableness of the resulting sixteen-level upward departure, require us to remand for resentencing. *See United States v. Montenegro–Rojo*, 908 F.2d 425, 431 (9th Cir.1990) (remanding for resentencing because the district court failed to explain by analogy its departure on the basis of inadequacy of criminal history category); *cf. United States v. Todd*, 909 F.2d 395, 398–99 (9th Cir.1990) (remanding because court failed to adequately explain degree of departure, although it had adequately explained its decision to depart).

■ The Government contends that the district court "effectively analogized" to U.S.S.G. § 2A2.2(b)(3), the Guideline for aggravated assault. The record does not reflect that the district court considered the standards of § 2A2.2(b)(3). Moreover, § 2A2.2(b)(3), a guideline for an offense that requires a specific intent to injure others, does not provide an appropriate analogy. There was no evidence that Sablan intended to injure any of the bystanders.

The offense level increases for permanent or serious bodily injuries under § 2B3.1 ("Robbery") and § 2B3.2 ("Extortion by Force or Threat of Injury or Serious Damage") provide more appropriate analogies for the upward departure in this case. Robbery and extortion by force, like property destruction by arson, are property-directed offenses that recklessly endanger others even when injury to others is not specifically intended. Under §§ 2B3.1 and 2B3.2, "[i]f any victim sustained bodily injury" the district court increases the offense level four points for

automobiles, and does not vary the analysis relating to the extent of the upward departure.

Property damage to the Post Office is, of course, within the "heartland" of the offense of maliciously damaging a United States building with an explosive, 18 U.S.C. § 844(f), and would

not constitute a permissible ground for upward departure. *See Koon*, —— U.S. at —— – ——, 116 S.Ct. at 2044–45.

**2.** Sablan was sentenced under the 1993 Guidelines.

"serious" bodily injury, six points for "permanent or life-threatening" bodily injury, or five points "if the degree of injury is between" those categories. It is true that an upward departure is permitted from the robbery guideline for multiple injured victims, *see* § 5K2.0, but here, too, the extent must be reasonably proportional to the single-victim level. The sixteen level upward departure by the district court does not reasonably relate to even multiple victim injury under a robbery analogy. On remand, the district court, if it chooses not to accept the recommended sentence in the plea bargain, should analogize to § 2B3.1 or § 2B3.2, or a comparable Guideline, if it decides to depart upwardly for bodily injuries pursuant to § 5K2.2.

■ Because the sentence greatly exceeded the appropriate Guideline analogy as discussed above, the sixteen-level upward departure was unreasonable and an abuse of discretion. *See Takai*, 941 F.2d at 742 (9th Cir.1991) (reviewing extent of departure for an abuse of discretion); *see also Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992) ("reasonableness determination looks to the amount and extent of the departure in light of the grounds for departing").

### III.

■ Sablan also argues that the district court improperly considered deterrence as a basis for the upward departure. The court was concerned that other contraband hand grenades were at large, and wished to deter their use. Because the district court was clearly authorized to depart upward because of the injuries to the victims, the additional ground of deterrence retains importance only as a factor that might affect the extent of the upward departure. We conclude that, to the extent that the district court may have increased the magnitude of the departure for reasons of deterrence, it abused its discretion.

The Commission created all of the Guidelines with the purpose of "crime control" in mind. *See* U.S.S.G. Ch. 1, Pt. A2–3. Deterrence of the use of explosives to damage government buildings clearly lies within the "heartland" of 18 U.S.C. § 844(f), and its applicable Guideline, § 2K1.4. Thus the use of an explosive device of itself would not justify departure. *See Koon*, —— U.S. at —— – ——, 116 S.Ct. at 2044–45. Such use does not constitute "an aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." U.S.S.G. § 5K2.0 (internal quotations omitted). There is nothing in the record to indicate that other stolen grenades at large in the community create a need for deterrence "substantially in excess" of that ordinarily involved in § 2K1.4 offenses. *See* § 5K2.0.

The district court, then, abused its discretion in considering deterrence of the use of grenades as a factor justifying upward departure. To the extent that this factor may have increased the magnitude of the departure for injury to victims, it contributed to the unreasonableness of the sentence. *See Williams*, 503 U.S. at 200–01, 112 S.Ct. at 1119–20 (if sentence would have been different absent the district court's consideration of an improper factor, the sentence was imposed "as a result of" a misapplication of the Guidelines); *see also Koon*, —— U.S. at —— – ——, 116 S.Ct. at 2053–54 (when district court bases departure on valid and invalid factors, remand is required unless reviewing court determines that district court would have imposed same sentence absent the invalid factors).

### IV.

The district court abused its discretion by not analogizing to appropriate Guidelines provisions in determining the extent of its upward departure. Largely as a consequence, the extent of its upward departure was unreasonable. The district court also abused its discretion to the extent that it gave effect, for purposes of departure, to a factor of deterrence lying in the "heartland" of the offense of conviction. We consequently vacate Sablan's sentence and remand for resentencing.

**SENTENCE VACATED; REMANDED.**