**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 95-11044

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

WENDY LOIS WELLS,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

November 27, 1996

Before GARWOOD, BARKSDALE, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Wendy Lois Wells ("Wells") appeals the district court's upward departure from the Sentencing Guidelines for her conviction for mail fraud pursuant to 18 U.S.C. § 1341.

### FACTS and PROCEDURAL HISTORY

A five-count indictment charged Wells with mail fraud, use of an unauthorized access device with intent to defraud, and use of an unauthorized social security account number for the purpose of fraud, in violation of 18 U.S.C. §§ 1341, 1029(a)(2), and 42 U.S.C.

§ 408(a)(8). Pursuant to a plea agreement, Wells pleaded guilty to one count of mail fraud.

Wells, while employed as a substitute teacher, searched through the desks of at least two teachers for whom she was substituting, obtained personal information and social security numbers, and had credit cards sent to her using their names and social security numbers. Wells then made purchases with the fraudulently obtained credit cards. The credit cards, account statements, and merchandise were sent to a fictitious address Wells set up in Irving, Texas.

Wells' base offense level for a violation of 18 U.S.C. § 1341 was 6 pursuant to U.S.S.G. § 2F1.1(a). Her offense level was increased four levels because the loss exceeded $20,000 and another two levels because the scheme involved more than minimal planning or more than one victim. Wells received a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. With a total offense level of 10 and a criminal history category of V, Wells' Guideline range of imprisonment was 21 to 27 months.

The district court filed *sua sponte* two letters it received from victims of Wells' scheme. The government filed a motion for upward departure after the first letter was filed. At sentencing, the district court granted the government's motion for upward departure. Wells was sentenced to a term of imprisonment of 30 months, three years of supervised release, and restitution in the

2

amount of $4,000.

**DISCUSSION**

Wells argues that the district court's upward departure was "unlawful" because it was based on factors "already considered by the [Sentencing Commission] in setting the base offense level under a particular guideline section or the specific offense characteristics under that guideline section." Wells' Brief at 6. Wells argues further that the Sentencing Commission has determined that "mere aggravation, no matter how real, would <u>not</u> support a departure." Wells' Reply Brief at 3.

At oral argument in September 1996, the parties argued the applicability of *Koon v. United States*, --- U.S. ---, 116 S.Ct. 2035 (1996), which was filed in June 1996, after the briefs in this case had been filed.[1] In *Koon,* police officers were charged with violating Rodney King's constitutional rights by using unreasonable force incident to arrest pursuant to 18 U.S.C. § 242. In its analysis of the Ninth Circuit's appellate review of the sentencing court's downward departure, the Supreme Court determined the appropriate standard of review and factors to be considered by a district court judge in departing from the Guidelines.

---

[1]The government briefed *Koon* in its Supplemental Letter Brief dated August 9, 1996; Wells responded on August 15, 1996.

As an initial matter, the Court noted, "[a] district court must impose a sentence within the applicable Guideline range, if it finds the case to be a typical one." *Id.,* 116 S.Ct. at 2040 (citing 18 U.S.C. § 3553(a)). A departure from the Guideline range is appropriate in "certain circumstances" *Id.*

The district court's departure is not reviewed de novo, but rather for an abuse of discretion. *Id.,* 116 S.Ct. at 2043. The parties here do not dispute that *Koon* clarified that a district court judge's decision to depart is reviewed for an abuse of discretion. Because the "sentencing court's departure decisions are based on the facts of the case," the appellate court needs to detail the facts that were before the district court. *Id.,* 116 S.Ct. at 2040.

In this case, the presentence report lists the merchants defrauded and itemizes the loss amounts attributed to each. The total accountable loss was over $20,000. The presentence report also details Wells' identity fraud as to victims Jennifer Sutton ("Sutton"), Mildred Robinson and Margaret Sells. The court also considered two letters submitted by victims of this fraud scheme, Sutton and Sue B. Cain ("Cain"), teachers for whom Wells had substituted.

Cain described her experiences resulting from Wells' fraud scheme as follows:

> It has been extremely difficult for me to begin the new school year with the emotional strain of dealing with all

4

aspects of this situation. It has cost me in terms of multiple times off work to appeal in J.P. Courts to explain and defend my position, to research our credit reports and to make literally hundreds of phone calls to explain my situation to the merchants and collection agencies who accepted the fraudulent checks given by Wendy Wells using my name and Social Security number. Each week I have faced the possibility of additional unjust arrest warrants in my name stemming from Wendy Well's [sic] fraudulent use of my name. For my own protection, I am being forced to carry a forgery affidavit with me at all times to prevent an unfair arrest. It is overwhelming that someone can take over one's identity so quickly.

District Court Record at 69 (Letter filed November 3, 1995). In addition, Cain filed a three-page attachment to the letter detailing meetings with attorneys and bank officials, warrants issued against her, and court appearances.

Sutton details her experiences as follows:

Correcting this [situation] has become a full time job. Having written and mailed over 50 letters, made an unknown number of phone calls, had to take time off from school and leave my classes with yet another substitute teacher, be interupted [sic] during class regularly to speak with police officers, detectives, postal inspectors, lawyers, and school district personell [sic] has been overwhelming. I have had to go to stores and financial instituions [sic] where Ms. Wells used my identity and accued [sic] bad debts . . . . My husband and I have both been turned down for credit due to this fraudulant [sic] activity. When I use my credit cards in stores, I am often asked to produce identification, asked to wait while the clerk calls a manager, asked to pay in cash, and even denied the ability to make purchases.

District Court Record at 75 (Letter filed November 3, 1996).

The sentencing judge found that this case involved "extreme circumstances, as described in these two letters . . ." Sentencing Transcript at 11. The sentencing judge also detailed his reasons for concluding that these circumstances went "beyond what's

5

normally involved in a case like this:"

> The thing that impresses me is not just the misuse of the credit cards, but the description by each one of the victims about the tremendous amount of time and energy that they had to devote to getting their credit cleared up, the embarrassment which they suffered from stores, collection agencies, being turned down for credit, having to produce identification, having to carry a perjury -- affidavit, having to carry -- having to pay cash.

*Id.*

The parties agree that *Koon* clarifies that a sentencing court contemplating departure should ask four questions:

> 1) What features of this case, potentially, take it outside the Guidelines' "heartland"[2] and make of it a special, or unusual, case?

> 2) Has the Commission forbidden departures based on those features?[3]

> 3) If not, has the Commission encouraged departures based on those features?

---

[2]    The Court in *Koon* defines "heartland" cases:

Turning our attention, as instructed, to the Guidelines manual, we learn that the Commission did not adequately take into account cases that are, for one reason or another, "unusual." 1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b).    The Introduction to the Guidelines explains:

> "The Commission intends the sentencing court to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Ibid.*

*Id.,* 116 S.Ct. at 2044.

[3]Wells does not dispute that the Sentencing Commission has not forbidden departures in fraud cases based on harm.

6

4) If not, has the Commission discouraged departures based on those features?

*Id.*, 116 S.Ct. at 2045 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir. 1993)).

The district court identified the features it considered took this case out of the "heartland." Wells argues that the analysis ends with the first question, since this case involves harm sufficiently considered by § 2F1.1. Specifically, Wells claims that "identity fraud" inherently involves the type of harm suffered by these victims.

The Court in *Koon* also defines the scope of inquiry available to the sentencing court answering the above questions:

> Acknowledging the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances, *see* 28 U.S.C. § 991(b)(1)(B), Congress allows district courts to depart from the applicable Guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3443(b). To determine whether a circumstance was adequately taken into consideration by the Commission, Congress instructed courts to "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." *Ibid.*

*Id.*, 116 S.Ct. at 2044.

Wells does not argue that the district court impermissibly considered evidence beyond the guidelines, policy statements and commentary. Instead, Wells contends that the court should have concluded that the psychological harm to the victims did not rise

7

to the level considered in § 5K2.3,[4] the guideline generally addressing upward departure. The appellant argues that, since the victims failed to demonstrate a "substantial impairment of the intellectual, psychological, emotional, or behavioral functioning," the court impermissibly departed upward. The *Koon* Court requires, however, that the sentencing court's analysis must conclude that, "as occurring in the particular circumstances," this case is "outside the heartland of the applicable Guideline." *Id.*, 116 S.Ct. at 2051.

Wells' argument ignores that the application notes to § 2F1.1, the guideline under which she was sentenced, specifically address

---

[4]  U.S.S.G. § 5K2.3 provides:

**Extreme Psychological Injury (Policy Statement)**

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

an upward departure for non-monetary harm and psychological harm. We agree with the government's argument that the harm to the victims considered by the district court is precisely the type for which § 2F1.1 encourages an upward departure. Specifically, the application notes to § 2F1.1[5] provide:

> In cases in which the loss determined under subsection (b)(1) does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted. Examples may include the following:
>
> (a) a primary objective of the fraud was non-monetary; or the fraud caused or risked reasonably foreseeable, substantial non-monetary harm;
>
> (c) the offense caused reasonably foreseeable, physical or psychological harm or severe emotional trauma;

U.S.S.G. § 2F1.1 app.nn.10(a) and (c) (1995). The government argues that the loss table in § 2F1.1 addresses the losses of merchants and insurers in this fraud scheme, not the losses of the victims trying to put their lives back together. We agree that the loss table accounts for the dollar amount at issue in this case, but these victims did not suffer monetary harm to any measurable degree. Instead, the substitute teachers whose identity Wells assumed lost days from work, feared arrest, were forced to appear

---

[5]We also find it significant that the Sentencing Commission amended the application notes to broaden the grounds for departure. Prior to these amendments, which became effective 1993, the same application notes provided for departure if:

(a) the primary objective was non-monetary;

(c) the offense caused physical or psychological harm;

U.S.S.G. § 2F1.1 app.nn.19(a) and (c) (1992).

9

in court, struggled to repair their credit rating, were not able to use the credit cards in their possession, and still face problems connected with this offense.  The loss table has not taken this extreme personal victimization, which certainly can be viewed as going beyond "aggravation," into account.  This departure decision is the type encouraged by the Sentencing Commission, since the sentencing court is in a unique position to make the necessary factual determinations:

> A district court's decision to depart from the Guidelines, by contrast, will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court. *See Mistretta*, 488 U.S. at 367, 109 S.Ct. at 652 . . . . Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline.  To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.  Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases.  District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.  In 1994, for example, 93.9% of Guidelines cases were not appealed. Letter from Pamela G. Montgomery, Deputy General Counsel, United States Sentencing Commission (Mar. 29, 1996).  "To ignore the district court's special competence--about the 'ordinariness' or 'unusualness' of a particular case--would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case . . . ." *Rivera*, 994 F.2d at 951.

*Koon,* 116 S.Ct. at 2046-47.

We find that the district court properly considered the

10

particular circumstances of this case in making its determination to depart upward.  The district court reasonably could have concluded, in its sound discretion, that the victims' travails involving arrest, warrants, court appearances, forgery charges and continuing credit difficulties made their harm "unusual," taking the case out of the "heartland."  A three-month upward departure, resulting in a 30-month, rather than a 27-month, term of imprisonment, is not an abuse of discretion in this case.[6]

## CONCLUSION

We find that the district court did not abuse its discretion in departing upward for the harm suffered by the victims whose identities were appropriated by Wells.  Accordingly, Wells' sentence is **AFFIRMED**.

---

[6]Since we affirm the district court's upward departure under U.S.S.G. § 2F1.1, we do not decide here whether Wells' sentence could have been adjusted upward for an abuse of a position of trust, argued alternatively by the government at sentencing.