**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David Tenorio SABLAN, Defendant–Appellant.**

**No. 94–10534.**

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 23, 1997. *

Decided June 5, 1997.

* The members of the en banc panel unanimously find this case to be appropriate for decision on the briefs and without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir. R. 34–4.

William C. Bischoff, Agana, Guam, for defendant-appellant.

Mark E. Kondas, Assistant United States Attorney, Agana, Guam; Vicki S. Marani, United States Department of Justice, Washington, D.C., for plaintiff-appellee.

## OPINION

LEAVY, Circuit Judge:

This appeal arises out of a district court's exercise of its discretion to depart upward from the applicable Guideline range in imposing sentence. The court found aggravating circumstances for its upward departure, as required by 18 U.S.C. § 3553(b) and (c).[1] Pursuant to 18 U.S.C. § 3742(e),[2] we must now determine whether the extent of that departure was unreasonable. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.

## FACTS AND PRIOR PROCEEDINGS

On November 12, 1993, David Tenorio Sablan, a twenty-nine year old native and resident of Guam, was given a live hand grenade by his friend, Jon Russell "Chas" Simpson, and told to throw it inside the headquarters of the local police department in order to create a diversion for Simpson's robbery of a nearby store. Sablan did not quite follow Simpson's instructions; instead, he threw the grenade into the police parking lot adjacent to the local Post Office. The grenade bounced off of a car and rolled towards the Post Office where several individuals, including a woman who was nine months pregnant, were standing. Five people were injured in the blast, three of them severely. In addition, several automobiles and the exterior wall of the Post Office were damaged by flying shrapnel.

Sablan pleaded guilty to territorial charges in Guam Superior Court. Pursuant to the terms of his plea agreement, Sablan was to serve ten years in prison, the sentence to run concurrently with any federal sentence which might be imposed. Federal prosecution was then sought in order for Sablan to be able to serve his sentence in a mainland federal penitentiary, where he hoped to receive psychiatric treatment that apparently was unavailable in the island facility. On June 1, 1994, Sablan waived federal indictment and, pursuant to a written agreement, entered a guilty plea to a single-count information charging him with injuring persons by maliciously

---

1. (b) Application of guidelines in imposing a sentence.—The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described....

18 U.S.C. § 3553(b) (in relevant part).

(c) Statement of reasons for imposing a sentence.—The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

* * *

(2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific rea-

son for the imposition of a sentence different from that described.

18 U.S.C. § 3553(c)(2).

2. (e) Consideration.—Upon review of the record, the court of appeals shall determine whether the sentence—

* * *

(3) is outside the applicable guideline range, and is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(e) (in relevant part).

damaging a Post Office with an explosive in violation of 18 U.S.C. § 844(f).[3]

The government agreed to recommend a sentence of ten years, and both parties to the plea bargain anticipated that the sentence imposed would be based on an adjusted offense level of 21 with a possible upward departure (pursuant to a subsequent motion filed by the government) to no more than level 32. The district court, however, departed upward to an offense level of 37 and imposed the (then) statutory maximum of twenty years' imprisonment,[4] to be followed by five years of supervised release. In addition, the court ordered Sablan to pay restitution in the amount of $19,928.72, and imposed a $50 special assessment fee. Sablan timely appealed from his sentence.

A panel of this court vacated the sentence, holding that the district court had abused its discretion by failing to gauge the extent of the departure by analogy to other Guideline provisions. *See United States v. Sablan*, 90 F.3d 362, 365–66 (9th Cir.1996). We granted rehearing en banc. *United States v. Sablan*, 101 F.3d 618 (9th Cir.1996).

### ANALYSIS

### I

█ It is common to say that the Sentencing Reform Act of 1984 (the "Act"), as amended, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. §§ 991–98, curtailed the broad discretion formerly afforded district judges at sentencing. What is less often noted is that the Act also provided the courts of appeals with limited jurisdiction to review federal sentences where practically no such review had existed before (i.e., with respect to those sentences which fell within the limitations set forth in the governing statutes). *See Dorszynski v. United States*, 418 U.S. 424, 431, 94 S.Ct.

3042, 3046–47, 41 L.Ed.2d 855 (1974) ("once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end").

In the several years since the adoption of the Guidelines, most, if not all, of the Circuits developed multi-step approaches to reviewing sentences that involved departures from the Guidelines. *See, e.g., United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.1989) (3-step analysis); *United States v. Palinkas*, 938 F.2d 456, 461 (4th Cir.1991) (4-step analysis), *judgment vacated on other grounds*, 503 U.S. 931, 112 S.Ct. 1464, 117 L.Ed.2d 610 (1992); *United States v. Rodriguez*, 882 F.2d 1059, 1067 (6th Cir.1989) (3-step analysis); *United States v. Gaddy*, 909 F.2d 196, 199 (7th Cir.1990) (similar test); *United States v. Lang*, 898 F.2d 1378, 1379–80 (8th Cir.1990) (similar test); *United States v. White*, 893 F.2d 276, 277 (10th Cir.1990) (similar test); *United States v. Valle*, 929 F.2d 629, 631 (11th Cir.1991) (per curiam) (similar test).

Our Circuit was no exception. In *United States v. Lira–Barraza*, 941 F.2d 745 (9th Cir.1991) (en banc), we rejected a five-step approach to reviewing departures in favor of a more streamlined three-part test, similar to that which had been announced earlier by the First Circuit in *Diaz–Villafane*. Under *Lira–Barraza*,

> we would first review de novo whether the trial court had legal authority to depart under 18 U.S.C. § 3553(b), which requires the presence of an aggravating circumstance of kind or degree not adequately considered by the Commission in formulating the Guidelines. *Id.* at 746. Next, we would review for clear error the factual findings upon which the existence of the identified circumstance was based. *Id.* Fi-

---

3. At the time of the offense, section 844(f) read, in relevant part, as follows:

   Whoever maliciously damages ... by means of an explosive, any building ... in whole or in part owned, possessed, or used by ... the United States ... shall be imprisoned for not more than ten years, or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than twenty years, or fined not more than $20,000, or both[.]

4. Between the time of the offense and sentencing, Congress amended subsection (f) to increase the maximum terms of imprisonment (i.e., from ten years to twenty years for damage to government property, and from twenty years to forty years for resultant injuries to third parties), and the maximum possible fines as well. *See* Act of Sept. 13, 1994, Pub.L. No. 103–322, § 320106(1), *reprinted in* 1994 U.S.C.C.A.N. (108 Stat. 2111) at 1801.

nally, we would review the extent of the departure from the applicable Guideline range for reasonableness under 18 U.S.C. § 3742(e)(3). *Id.* at 747.

*United States v. Beasley,* 90 F.3d 400, 402 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996).

The Supreme Court has now changed all of this. In *Koon v. United States,* —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Court noted as a general proposition that "[a] district court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Id.* at ——, 116 S.Ct. at 2046.

Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

*Id.* at ——, 116 S.Ct. at 2047. In light of these considerations, the Court declared that a unitary abuse of discretion standard was to be used when reviewing departure decisions. *Id.* at ——, 116 S.Ct. at 2047–48.

By ruling as it did, the Court effectively rejected each of the multi-step approaches to reviewing sentencing departures that had been adopted by the various Circuits and "collapsed" the steps into a single inquiry. *See United States v. Cali,* 87 F.3d 571, 579–80 (1st Cir.1996) (acknowledging that *Koon* established a unitary abuse of discretion standard for reviewing departure decisions). *Accord United States v. Rioux,* 97 F.3d 648, 662–63 (2d Cir.1996); *United States v. Romualdi,* 101 F.3d 971, 973 (3d Cir.1996); *United States v. Hairston,* 96 F.3d 102, 106 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 956, 136 L.Ed.2d 843 (1997); *United ed States v. Wells,* 101 F.3d 370, 372 (5th Cir.1996); *United States v. Jones,* 107 F.3d 1147, 1154 n. 6 (6th Cir.1997); *United States v. Besler,* 86 F.3d 745, 747 (7th Cir.1996); *United States v. Field,* 110 F.3d 587, 591–92 (8th Cir. Apr.7, 1997); *United States v. Beasley,* 90 F.3d at 402–403; *United States v. Lowe,* 106 F.3d 1498, 1501 (10th Cir.1997); *United States v. Bernal,* 90 F.3d 465, 467 (11th Cir.1996) (per curiam); *United States v. Dyce,* 91 F.3d 1462, 1472 (D.C.Cir.) (Tatel, J., concurring in denial of rehearing and rehearing en banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996). The Court noted, however, that even under this deferential abuse of discretion standard, a "district court by definition abuses its discretion when it makes an error of law." *Koon,* —— U.S. at ——, 116 S.Ct. at 2047.

In light of *Koon*'s mandate that a unitary abuse of discretion standard governs our review of departure decisions, we conclude that *Lira–Barraza* has been overruled. *See Beasley,* 90 F.3d at 403. *See also United States v. Ripinsky,* 109 F.3d 1436, 1445–46 (9th Cir. Mar.28, 1997) (citing *Beasley* ).

## II

To say that departure decisions must be reviewed for an abuse of discretion, however, says nothing about what factors a district court should take into consideration when confronted with the question of whether or not to depart in a particular case. Fortunately, the Supreme Court spelled out just what those factors should be:

[A] sentencing court considering a departure should ask the following questions:

"1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?

"2) Has the Commission forbidden departures based on those features?

"3) If not, has the Commission encouraged departures based on those features?

"4) If not, has the Commission discouraged departures based on those features?" *United States v. Rivera,* 994 F.2d 942, 949 (C.A.1 1993).

We agree with this summary. If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for

departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. Cf. *ibid.* If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," *id.*, at 949, decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent." 1995 U.S.S.G. ch. 1, pt. A.

*Koon,* —— U.S. at ——, 116 S.Ct. at 2045.

■ The district court identified factors which took Sablan's case out of the "heart-

land," and expressly relied on such approved grounds for departure as those listed at U.S.S.G. ch. 5, pt. K, § 2, including "significant physical injury" (§ 5K2.2) [5] and "property damage" (§ 5K2.5).[6] In light of the above, it cannot be said that the district court abused its discretion by deciding to depart from the Guideline range.

### III

■ As a final matter, we must determine whether the extent of the district court's departure was so great as to be unreasonable for purposes of 18 U.S.C. § 3742(f)(2).[7] *See Williams v. United States,* 503 U.S. 193, 202, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992) (if the reviewing court concludes that the decision to depart was not the result of an erroneous interpretation of the Guidelines, it must then determine whether "the resulting sentence [is] an unreasonably high ... departure from the relevant guideline range"). In the absence of such a determination, we must affirm the sentence imposed. *See* 18 U.S.C. § 3742(f)(3).[8]

5. If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated. In general, the same considerations apply as in § 5K2.1 [i.e., when death results].
U.S.S.G. § 5K2.2, p.s.
Sablan's base offense level of 24 was calculated under U.S.S.G. § 2K1.4(a)(1)(A), because he knowingly created a substantial risk of death or serious bodily injury to third parties by damaging property with explosives. *See id.* However, because bodily injury actually resulted, an upward departure was warranted under § 5K2.2. *See* U.S.S.G. § 2K1.4, comment. (n.1).

6. If the offense caused property damage or loss not taken into account within the guidelines, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent to which the harm was intended or knowingly risked and on the extent to which the harm to property is more serious than other

harm caused or risked by the conduct relevant to the offense of conviction.
U.S.S.G. § 5K2.5, p.s.

7. (f) Decision and disposition.—If the court of appeals determines that the sentence—
* * *
(2) is outside the applicable guideline range and is unreasonable or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable, it shall state specific reasons for its conclusions and—
(A) if it determines that the sentence is too high and the appeal has been filed under subsection (a), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate. . . .
18 U.S.C. § 3742(f)(2)(A).

8. (f) Decision and disposition.—If the court of appeals determines that the sentence—
* * *
(3) is not described in paragraph (1) [i.e., imposed in violation of law or an incorrect application of the Guidelines] or (2) [outside the applicable Guideline range and unreasonable in extent, or plainly unreasonable if "imposed for an offense for which there is no applicable sentencing guideline"], it shall affirm the sentence.
18 U.S.C. § 3742(f)(3) (in relevant part).

The district court identified three reasons for its decision to depart upward: The significant physical injuries suffered by three of the bombing victims, the extent and value of the property damaged in the blast, and the need for greater deterrence than usual because the judge knew that the criminal who had asked Sablan to throw the grenade into the police station had bought at least one more, and the man who had sold it to him might well have more.

> There are several other factors besides the—criteria noted, the severe pain and hospitalization. And one of them is that there are also other grenades still out there.
>
> * * *
>
> The justification for this, the upward departure from the prescribed Sentencing Guidelines to the 20–year maximum imprisonment sentence authorized by law is justifiable considering the extent of the physical injury, and the property damage suffered by the victims. Despite the victim's—or the defendant's—excuse me—defendant's characteristics, detonating a grenade is a very serious offense; the harm placed on other people's lives and property will not be tolerated.
>
> * * *
>
> The court also settled on this point in the Sentencing Guidelines mainly because of the physical injury involved; and secondarily, because of the property damage, and also because it is hoped that there be some deterrence that will be gained, that will be derived as a result of this case.

C.R. # 14 (T.R. of 10/21/94) at 10, 22–23.

> The presentence report said:
>
> [T]he defendant met a friend of Simpsons, J.T. Taimanglo. Taimanglo gave Sablan a grenade at Simpson's home, Taimanglo showed two grenades which Simpson paid a "fiver" for each grenade.

As already noted, the first two factors have been identified by the Sentencing Commission as grounds justifying upward departures. See U.S.S.G. § 5K2.2, p.s. (physical injury) and U.S.S.G. § 5K2.5, p.s. (property damage). The third factor was a permissible ground for departure in this case, because of the special circumstance alluded to by the judge. The Sentencing Commission weighed the need generally to deter damaging government property with explosives or fire, pursuant to the directive that it do so in 28 U.S.C. § 994(c)(6). But the special circumstance of more live grenades known still to be in related criminal hands in the locality was an out of the ordinary circumstance which the district judge could permissibly consider in deciding that more deterrence than usual was necessary.

Here, the court's principal concern was clearly with the significant injuries suffered by three of the bombing victims. Citing *United States v. Singleton,* 917 F.2d 411, 413–14 & n. 2 (9th Cir.1990) as guidance for what constitutes a significant injury under U.S.S.G. § 5K2.2, the court discussed the nature and extent of the wounds inflicted by the bomb:

> And for the record, Ann C. Mendiola still has shrapnel in her body, still experiences numbness and pain in her bones in the area where the shrapnel remains; and for three weeks after the blast incident she had difficulty sleeping, and she had nightmares about the blast.
>
> Ms. Mildred Isimang was nine months pregnant; she had four shrapnel wounds to her back[;] one on her buttocks, one on her left arm, one near her left ear, two shrapnel wounds in each leg. And she stated that delivering her baby was hell because it was very difficult since she couldn't lie on her back; the labor lasted seven hours which was the longest she had experienced. And she still has shrapnel in her body and experiences numbness and pain where indicated.
>
> Mr. Toves had to have surgery, because of shrapnel injuries to the stomach area. He had the through and through perforation of the ileum, with perforation of the right transverse column, laceration of the omentum, and right perineal histoma. And because of his injuries he had to use 300 hours of sick leave to recuperate.

C.R. # 14 (T.R. of 10/21/94) at 6–7.

The district court carefully explained its reasons for departing upward from the Guideline range, and did so on the basis of

factors that have been expressly designated by the Sentencing Commission as approved bases for upward departure.

In *Lira–Barraza*, we relied heavily on the Seventh Circuit's decision in *United States v. Ferra*, 900 F.2d 1057 (7th Cir.1990), *appeal following remand*, 948 F.2d 352 (7th Cir. 1991), as support for the proposition that the extent of an upward departure *requires* a comparison to analogous Guideline provisions.[9] 941 F.2d at 748–50. In light of *Koon*, we now reject such a mechanistic approach to determining whether the extent of a district court's departure was unreasonable, and hold that where, as here, a district court sets out findings justifying the magnitude of its decision to depart and extent of departure from the Guidelines, and that explanation cannot be said to be unreasonable, the sentence imposed must be affirmed.[10]

## CONCLUSION

As the Supreme Court has repeatedly noted, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *Koon*, —— U.S. at ——, 116 S.Ct. at 2046 (quoting *Williams*, 503 U.S. at 205, 112 S.Ct. at 1121–22 (in turn quoting *Solem v. Helm*, 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983))). Because the extent of the district court's departure was not unreasonable, we find no abuse of discretion in the sentence

9. A split panel of the Seventh Circuit recently upheld the rationale of *Ferra* in the face of *Koon*. *See United States v. Horton*, 98 F.3d 313 (7th Cir.1996). We note in passing that the majority in *Horton* cited to *Lira–Barraza* as continuing support for the above rule (i.e., that upward departures require comparisons to analogous Guideline provisions), while ignoring such available decisions from this Circuit as *Beasley* and *United States v. Goshea*, 94 F.3d 1361, 1365 (9th Cir.1996), both of which declared *Lira–Barraza* to have been overruled by *Koon*.

10. Our holding should not be interpreted as prohibiting the district courts from considering the possible relevancy of analogous guidelines. *See* 18 U.S.C. § 3553(b) ("In the absence of an applicable sentencing guideline in the case of an offense other than a *petty offense*, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by

imposed. Accordingly, the decision appealed from is

AFFIRMED.

TASHIMA, Circuit Judge, with whom HUG, Chief Judge, and BROWNING, SCHROEDER and REINHARDT, Circuit Judges, join, dissenting:

All 138 of the district judges in this circuit will applaud today's majority opinion because, if a ground for departure can be found, it restores to them the unfettered discretion in sentencing which, until today, they believed Congress had closely cabined when it passed the Sentencing Reform Act of 1984. I dissent because the majority misreads the Court in *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), and casts aside the mandate of the Sentencing Guidelines. This near-absolute, and virtually unreviewable, discretion in determining the extent of a departure will apply equally to downward departures, as well as to upward departures. *See United States v. Lira–Barraza*, 941 F.2d 745, 754 n. 2 (9th Cir.1991) (en banc) (Hall, J., concurring).

Relying on *Koon*, the majority holds that *Lira–Barraza*, 941 F.2d 745, has been overruled.[1] We agree insofar as *Lira–Barraza's* three-part standard of review is concerned. As the majority holds, *Koon* now imposes a unitary abuse of discretion standard. *Koon*, however, did not deal with the extent of

guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission."). Such a ruling on our part would effectively amount to a usurpation of the power delegated by Congress to the Sentencing Commission to impose categorical proscriptions against considering certain factors at sentencing. *See Koon*, —— U.S. at ——, ——, 116 S.Ct. at 2047, 2051. An analysis and explanation by analogy, per *Lira–Barraza*, may still be a useful way for the district court to determine and explain the extent of departure, but it is not essential.

1. Although this holding is announced in Part I of the majority opinion, which discusses the standard of review, with which we do not quarrel, the discussion in Part III clearly indicates that the holding applies as well to *how we review the extent* of a departure.

departures, only the grounds. This is where the majority strays.

The Court could not have been clearer that in *Koon* it was reviewing only the grounds of departure-the decision to depart-not the extent of any departure:

> ●In this case we explore the appropriate standards of appellate review of a district court's *decision to depart* from the Guidelines. —— U.S. at ——, 116 S.Ct. at 2040 (emphasis added).

> ●We granted certiorari to determine the standard of review governing appeals from a district court's *decision to depart* from the sentencing ranges in the Guidelines. *Id.* at ——, 116 S.Ct. at 2043 (emphasis added).

Applying an abuse of discretion standard of review to review the extent of a departure for unreasonableness is not new. We have been doing so for some time. *See United States v. Takai,* 941 F.2d 738, 742 (9th Cir. 1991). Thus, since this part of our standard of review of departures is unaffected by *Koon,* it is difficult to see how the majority can read *Koon* as overruling *Lira–Barraza* as to how we review the extent of a departure for abuse of discretion: by "requiring that departure sentences ... be determined in light of the structure, standards and policies of the Act and Guidelines...."[2] 941 F.2d at 751. By wiping out *Lira–Barraza's*

requirement that the extent of a departure be analogized to other Guideline categories, we have come to the place where "[t]he reasonableness of sentences determined without reference to identified standards ... [are no longer] susceptible to rational review." *Id.* at 749 (footnote omitted).

The majority's "review" of the extent of the departure in this case is, itself, proof that it is unguided by any rational standard. In sum, all that the majority's review of the extent of the departure amounts to is that because two of the three grounds relied on by the district court are identified in the Guidelines as proper *grounds* for departure, and, in the majority's view, the "district court carefully explained its reasons for departing upward," the departure was not unreasonable. However, the explanation relied on by the majority is no more than a narrative statement that three persons sustained significant injury. As the three-judge panel observed, "[w]e have no way of knowing how the district court measured the degree of departure." *United States v. Sablan,* 90 F.3d 362, 365 (9th Cir.1996) (*Sablan I* ). Any justification for the extent of the 16–level departure is wholly unexplained, except in the vaguest, general terms.[3]

The majority also acknowledges that the district court relied, in part, on the need for deterrence, as a ground for departure.[4] It attempts to justify this as a ground for de-

---

2. Even on the question of whether to depart at all, *Koon* recognizes the appropriateness of analogizing to the Guidelines.
   > If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," *id.,* at 949, decide whether it is sufficient to take the case out of the Guideline's heartland.
   —— U.S. at ——, 116 S.Ct. at 2045 (quoting *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993)).

3. The district court also relied, in part, on U.S.S.G. § 5K2.5, p.s. (property damage), to justify its upward departure. However, there is no explanation of how, or to what extent, the property damage here took the offense out of the heartland of U.S.S.G. § 2K1.4.

4. The majority, *post hoc,* characterizes this ground as "the need for greater deterrence than usual." However, that is not what the district

court said. The totality of its comments on this subject at sentencing were:

> I know that, but one of the other things here that the court is concerned about also is deterrence. There are still some grenades out there, and those are some of the things that primarily, the primary concern of the court is the physical injury inflicted here, there's just too much suffering endured by these people. Accordingly, the court will depart to level 37, as it stated before.
>
> The court also settled on this point in the Sentencing Guidelines mainly because of the physical injury involved; and secondarily, because of the property damage, and also because it is hoped that there be some deterrence that will be gained, that will be derived as a result of this case.

However, whether it be characterized as "deterrence," as the district court did, or as "the need for greater deterrence than usual," as the majority does, there is no reasoned justification for the extent of the departure based on this ground.

parture because of "the special circumstances of more live grenades known still to be in related criminal hands in the locality."

First, I disagree that deterrence, or the need for greater deterrence, is a permissible ground for departure. Under U.S.S.G. § 5K2.0, a departure can be grounded only upon "an aggravating or mitigating circumstance of a kind, *or to a degree*, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines (quoting 18 U.S.C. § 3553(b))." The "circumstances" referred in § 5K2.0 are those identified with the offender or the offense. The general need for deterrence is not a "circumstance" of either kind. If a departure could be based on such a general circumstance, then there is no reason why a departure would not be justified because of the increase of drugs in the community, or a sudden outbreak of drug-related offenses, or the proliferation of handguns in the community. As the three-judge panel noted, deterrence is not a permissible ground for departure because deterrence permeates the whole of the Guidelines.

> The Commission created all of the Guidelines with the purpose of "crime control" in mind. *See* U.S.S.G. Ch. 1, Pt. A2–3. Deterrence of the use of explosives to damage government buildings clearly lies within the "heartland" of 18 U.S.C. § 844(f), and its applicable Guideline, § 2K1.4.

*Sablan I*, 90 F.3d at 366.

Second, in concluding that its own identified "need for greater deterrence" was an acceptable ground for a departure, the majority does so in disregard of the analysis mandated by *Koon*, —— U.S. at ——, 116 S.Ct. at 2045. Since "deterrence" is not an "encouraged" departure factor, it is, at best, "a factor [ ] unmentioned in the Guidelines." *Id.* Before a departure can be based on such a factor, however, "the court must, after considering the 'structure and theory of both relevant individual guidelines and the Guide-

lines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland." *Id.* Here, neither the district court nor the majority has made this necessary analysis. Thus, it was an abuse of discretion for the district court to rely on this as a ground for departure.[5]

Quite apart from deterrence as a ground for departure, the district court's limited statements about "deterrence" do not explain, at all, the extent of the departure based on this ground. They certainly do not explain why a 16–level departure was justified, rather than a far lower or higher one. And, in its "review" of the reasonableness of the extent of the departure based on this ground, the majority does not even attempt to articulate a justification for the extent of the departure.

The district court identified three discrete grounds as the bases for its 16–level departure. At least one of these grounds, deterrence, is not a permissible ground for departure.[6] In these circumstances, "a remand is required unless [the court of appeals] determines the district court would have imposed the same sentence absent reliance on the invalid factors." *Koon*, —— U.S. at —— ——, 116 S.Ct. at 2053–54. *See also Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992).

> In this case, however, we cannot make that determination [required by *Koon* of whether the district court would have imposed the same sentence absent reliance on the invalid ground] given the district court's apparent reliance on several factors jointly as its basis for departure and its failure to provide any justification for the *extent* of its departure in this case.

*United States v. Barajas–Nunez*, 91 F.3d 826, 834 (6th Cir.1996) (emphasis in original).

Finally, we note that our position on the continued vitality of *Lira–Barraza*, after

**5.** As the Court has noted, "[a] district court by definition abuses its discretion when it makes an error of law." *Koon*, —— U.S. at ——, 116 S.Ct. at 2047.

**6.** It is impossible to tell whether "property damage" was a permissible ground for departure because the district court never articulated its reasons for believing why the property damage in this case took the case out of the heartland of U.S.S.G. § 2K1.4. *See* U.S.S.G. § 5K2.5.

*Koon,* is shared by the other circuits that have reached the issue.[7] In a case that did involve review of the extent of a departure, the Sixth Circuit held:

> Although *Koon* has changed the standard of review to an abuse of discretion standard, the rationale for requiring an explanation of reasons for departure and the extent thereof still remains.

*Barajas–Nunez,* 91 F.3d at 834. Similarly, the Seventh Circuit has held:

> Although *Koon* changed the standard of review with respect to the latter issue [of whether to depart at all], [—— U.S. at ——–––—], 116 S.Ct. at 2046–48, and adopted a unitary abuse of discretion standard for the review of departure decisions, *id.* at 2047–48, we do not believe that it subverted our rationale for requiring a district court to explain its reasons for assigning a departure of a particular magnitude in a manner that is susceptible to rational review. *See, e.g.,* [*United States v.*] *Ferra,* 900 F.2d at 1061–62 [ (7th Cir.1990) ]. Indeed, we view this requirement as indispensable to furthering the "fundamental goal of the Sentencing Reform Act, which is to place federal sentencing on an objective, uniform, and rational (or at least articulable, *nonintuitive* ) basis," *United States v. Pullen,* 89 F.3d 368, 371 (7th Cir.1996) (emphasis added), a goal that is not jettisoned merely because a particular offense merits a departure from the Guidelines. Because this requirement does not deprive the district judge of the deference to which he is due, we do not believe it to be inconsistent with *Koon,* —— U.S. at ——–––—, 116 S.Ct. at 2047–48; *see, e.g., Sablan,* 90 F.3d at 365 (district court abuses discretion by not adequately linking extent of departure to structure of Guidelines).

*United States v. Horton,* 98 F.3d 313, 319 (7th Cir.1996).

In short, the majority has not cited a single case to support its conclusion that *Koon* should be read to overrule *Lira–Barraza,* and similar cases, which require district courts to rationalize the extent of sentencing departures by analogy to the Guidelines or otherwise. The three-judge panel in *Sablan I* had it right. *Koon* did not overrule *Lira–Barraza* on review of the extent of departures.

We do not, however, read *Koon* as freeing the district court from the general framework of the Guidelines in determining the extent of a departure. Indeed, *Koon* stated that the decision whether departure is justified by a factor not adequately considered by the Commission, or by the presence of a discouraged factor in an unusual or exceptional way, "are matters determined in large part by comparison with the facts of other Guideline cases." *Koon,* —— U.S. at ——, 116 S.Ct. at 2047. Similarly, we conclude that the extent of an upward departure must still be governed by analogy to other Guidelines categories, as we held in [ ] *Lira–Barraza,* 941 F.2d at 748–51[ ]. As we said there, "[t]he reasonableness of sentences determined without reference to identified standards would not be susceptible to rational review." *Id.* at 749. The district court retains discretion, but it is not free to divest itself entirely of the structure of the Guidelines. *Id.* at 748.

*Sablan I,* 90 F.3d at 365.

Because, like the three-judge panel, I would vacate the sentence and remand for resentencing in accordance with *Lira–Barraza,* I respectfully dissent.

---

**7.** The majority cites, in Part I of its opinion, the expected slew of cases confirming that *Koon* now mandates a unitary abuse of discretion standard of review in departure cases. To repeat, we have no quarrel with these cases. None of these cases, however, save one, including *United States v. Beasley,* 90 F.3d 400 (9th Cir.), *cert. denied,* ——

U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996), involved or addressed the issue of how the extent of a departure should be reviewed. The one exception concluded that *Koon* did not affect that circuit's prior caselaw on the manner in which the extent of a departure is reviewed. *See United States v. Cali,* 87 F.3d 571, 580–81 (1st Cir.1996).